# EXHIBIT 1

# EMPLOYEE CONFIDENTIALITY, INVENTIONS, & NON-SOLICITATION AGREEMENT

This Employee Confidentiality and Inventions Agreement (this "Agreement") is made as of 2-18-2010 [date] by and between Multi Packaging Solutions (the "Company") and Juan Sanchez ("Employee"). In consideration of Employee's continued employment by the Company, the Company's promise to disclose to Employee subsequent to the date hereof confidential and proprietary information belonging to the Company, the compensation now and hereafter paid to Employee, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee hereby agrees with the Company as follows:

## 1. CONFIDENTIALITY AND NONDISCLOSURE

a. The Company and Employee acknowledge that the services to be performed by Employee for the Company are unique and extraordinary and, as a result of such employment, Employee has come into and will continue to come into possession of Confidential Information (as such term is defined below) relating to the business practices of the Company and its parent and affiliates. The term "Confidential Information" shall mean any and all trade secrets, data, confidential knowledge or any other proprietary information (whether verbal or recorded) relating to the Company, its parent or any of its subsidiaries or affiliates, or any of their respective activities. By way of illustration, Confidential Information includes, but is not limited to (a) inventions, trade secrets, ideas, processes, formulas, data, lists, programs, other works of authorship, manuscripts, drafts, compilations, know-how, negative know-how, improvements, discoveries, developments, products, articles of manufacture, apparatuses, diagrams, methods, designs and techniques relating to the business or proposed business of the Company and any improvements whatsoever thereon that were learned or discovered by Employee during the term of Employee's employment with the Company (hereinafter, such Confidential Information is collectively referred to as "Inventions"); (b) personnel lists, financial information and financial performance data, research projects, proprietary software or software customization, services used, pricing, customer contacts, suppliers, acquisition plans, financial forecasts, licenses, customer needs, market surveys, training content, customer lists and contacts, business prospects, cost, sources, marketing, selling and servicing; and (c) information regarding the skills and compensation of other employees of the Company.

b. Employee will at all times, during the term of his employment and thereafter, hold Confidential Information in strictest confidence and will not use, disclose, divulge, lecture upon, or publish any Confidential Information to any other person, firm, or entity, except on behalf of the Company in furtherance of Company business. Employee shall take reasonable care and precaution to guard against the accidental disclosure of Confidential Information, and Employee will promptly report circumstances of unauthorized or improper disclosure, whether intentional or accidental, including disclosure by persons other than Employee.

c. During his employment, Employee will not remove Confidential Information from the business premises of the Company, except for the exclusive purpose of carrying out Company business with permission of Employee's supervisor or senior management. Employee will not intermingle Confidential Information with Employee's personal files, computers,

2-10

diskettes, compact disks or like format, or any other personal electronic or non-electronic data storage devices or mechanisms that are not wholly owned by the Company. Employee will not transmit, or cause to be transmitted, Confidential Information via electronic mail to personal, non-business addresses, or the addresses of unauthorized recipients.

  d. Without limiting the foregoing, upon the termination of employment for any reason, Employee shall immediately deliver to the Company all documents and other material in his possession or under his control containing any Confidential Information and/or relating to the business of the Company, and shall extract and remove any Confidential Information intermingled within his personal files or possessions.

  e. Employee understands that the Company may from time to time receive from third parties confidential, nonpublic or proprietary information ("Third Party Information") subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. During the term of Employee's employment and thereafter, Employee will hold Third Party Information in the strictest confidence and will not disclose (to anyone other than Company personnel who need to know such information in connection with their work for the Company) or use, except in connection with Employee's work for the Company, Third Party Information unless expressly authorized by an executive officer of the Company in writing.

2. INVENTIONS

  a. Employee will disclose promptly, completely and in writing to the Company and will hold in trust for the sole right and benefit of the Company any and all Inventions that were made, discovered, conceived, authored, developed, learned or reduced to practice, either by Employee or jointly with others, during Employee's employment (including any and all inventions based wholly or in part upon ideas conceived during the term of this Agreement) or using the Company's or any subsidiary's or affiliate's time, data, facilities or materials. Employee agrees that all such Inventions are the Company's exclusive property, whether or not patent or copyright applications are filed thereon, and Employee hereby assigns to the Company, its designee, its assigns, its successors or its legal representatives, all of Employee's right, title and interest in and to any and all such Inventions, whether or not patentable or registrable under copyright or similar statutes. This assignment will be binding upon Employee and Employee's heirs, executors, administrators and assignees.

  b. Employee acknowledges that all original works of authorship that are made by Employee (solely or jointly with others) during the term of Employee's employment with the Company and that are within the scope of Employee's employment and protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act (17 U.S.C. § 101).

  c. Inventions, if any, patented or unpatented, that Employee made prior to the commencement of Employee's employment with the Company are excluded from the scope of this Agreement. To preclude any possible uncertainty, Employee has set forth on Exhibit A attached hereto a complete list of all Inventions that Employee has, alone or jointly with others, conceived, developed, or reduced to practice or caused to be conceived, developed, or reduced to

practice prior to commencement of Employee's employment with the Company, that Employee considers to be his property or the property of third parties and that Employee wishes to have excluded from the scope of this Agreement. If disclosure of any such Invention on Exhibit A would cause Employee to violate any prior confidentiality agreement, Employee understands that Employee is not to list such Inventions in Exhibit A but is to inform the Company that all Inventions have not been listed for that reason.

      d.     Employee will assist the Company or any subsidiary or affiliate at any time during or after the term of this Agreement, at the Company's expense, to obtain and from time to time enforce United States and foreign rights relating to the Inventions in any and all countries. To that end, Employee will aid in the preparation, execution, verification and delivery of any disclosures, patent applications, documents or papers and perform such other acts (including appearances as a witness) within the scope and intent of this Agreement required to apply for, obtain, perfect, evidence, sustain and enforce the Company's rights, including without limitation patents, in the Inventions and the assignment thereof in the United States or in any other country and in connection with such other proceedings as may be necessary to vest title thereto in the Company, or its successors or assignees. In addition, Employee will execute, verify, and deliver assignments of such rights to the Company or its designee. If such assistance takes place after this Agreement is terminated, the Company will pay Employee at a reasonable rate for any time that Employee actually spends in such work at the Company's request. In the event the Company is unable for any reason, after reasonable effort, to secure Employee's signature on any document needed in connection with the actions specified in this section, Employee hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as his agent and attorney in fact, to act for and in Employee's behalf to execute, verify, and file any such documents and to do all other lawfully permitted acts to further the purposes of this section thereon with the same legal force and effect as if executed by Employee. Employee hereby waives and quitclaims to the Company any and all claims, of any nature whatsoever, that Employee now or may hereafter have for infringement of any rights assigned hereunder to the Company.

      e.     Employee acknowledges and agrees that any Invention or patent application therefor made by Employee within one (1) year following termination of Employee's relationship with the Company shall be presumed to be owned by the Company, unless Employee demonstrates through written records and other evidence that such Invention or patent application therefor made no use of any Confidential Information.

3. NON-SOLICITATION

      a.     Employee agrees that, while employed by MPS and for eighteen (18) months after employment ceases, Employee will not solicit, recruit, hire or assist in the recruitment, solicitation, or hire of, any of MPS's employees to provide the same or similar services to an employer other than MPS.

4. MISCELLANEOUS PROVISIONS

   a. Employee understands that he shall not use the proprietary or confidential information or trade secrets of any former employer or any other person or entity in connection with Employee's employment with the Company. During Employee's employment by the Company, Employee will not improperly use or disclose any proprietary or confidential information or trade secrets, if any, of any former employer or any other person or entity to whom Employee has an obligation of confidentiality, and will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person or entity to whom Employee has an obligation of confidentiality unless consented to in writing by that former employer, person, or entity.

   b. Employee represents that his performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement between Employee and any other employer, person or entity. Employee has not entered into, and agrees that he will not enter into, any agreement either written or oral in conflict herewith.

   c. Because Employee's services are personal and unique and because Employee will have access to and become acquainted with the Confidential Information of the Company, the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance, or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

   d. In the event Employee is served with a valid subpoena or other court or administrative agency process or paper requiring the disclosure of Confidential Information, including by testimony, whether during employment or thereafter, Employee will promptly notify the Company and provide the Company with an opportunity to intervene in order to protect its Confidential Information from public disclosure, at the Company's expense. Notice to the Company is effective if delivered by fax to: 517-327-8281 Attention Lynda Group, VP HR, or via certified U.S. mail addressed to:5800 W. Grand River Ave., Lansing, MI 48906, Attention Lynda Group, VP HR.

   e. Unless expressly provided for pursuant to a separate agreement, Employee is an employee at-will, and nothing within this Agreement shall be regarded as altering the at-will relationship between Employee and the Company.

   f. Employee should retain a copy of this Agreement and Employee agrees that he will provide a copy of this Agreement to any potential or actual subsequent employers or businesses in which he becomes an owner or principal, where such employer or business is engaged in any business similar to or competitive with the Company. Notwithstanding the foregoing, the Company reserves the right to provide a copy of this Agreement to any potential or actual subsequent employers of Employee.

   g. This Agreement is governed by the law of the State of Michigan and, where applicable, federal law. Venue regarding any dispute hereunder shall lie in the courts in and for Clinton County, MI.

h.  If any term or provision herein is deemed to be unenforceable, the unenforceable term or provision will be stricken and the remaining provisions given full force and effect.

i.  This Agreement sets forth the entire agreement and understanding between the Company and Employee relating to the subject matter hereof and supercedes and merges all prior discussions. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in Employee's duties, salary, or compensation will not affect the validity or scope of this Agreement. As used in this Agreement, the period of Employee's employment includes any time during which Employee may be retained by the Company as a consultant.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**Multi Packaging Solutions**

By: _Mark Rohr_ — 2/23/10
MPS Official Signature/Date

MARK ROBERTS  VP
Printed Name/Title


Agreed:

_Juan Sanchez_ — 2/19/2010
Employee Signature/Date


JUAN SANCHEZ
Printed Name of Employee

2-10

## EXHIBIT A

Ladies and/or Gentlemen:

The following is a complete list of all inventions or improvements relevant to the subject matter of my employment by Multi Packaging Solutions (the "Company") that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my employment by the Company that I desire to remove from the operation of the Company's Employee Confidentiality and Inventions Agreement.

_____    I have no inventions or improvements to disclose.

_____    I have inventions or improvements which I have disclosed on the attached Invention Disclosure form(s).

_____    Due to certain confidentiality obligations, I cannot disclose certain inventions that otherwise would be listed.

_____
Signature

__2/18/2010_____
Date

# INVENTION DISCLOSURE

Invention Disclosure # _____

N/A

Inventors: 1. _____

2. _____

3. _____

Title of Invention: _____

Problem solved by invention: _____

Invention Description: _____

*Add additional signed, dated sheets and drawings if necessary.*

Has this invention been disclosed outside of the Company? Yes ____ No ____

Inventor Signature: _____ Date: _____

DLI:5838671v3                              8