## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**WESTROCK COMPANY AND**
**MULTI PACKAGING SOLUTIONS,**
**INC.,**

          **Plaintiffs,**

**v.**

**MAX SOLUTIONS, INC., ANTHONY**
**GENOVESE, AND DOES 1-25,**
**INCLUSIVE,**

          **Defendants.**

Civil Action No.: 2:23-cv-273

Document Electronically Filed

## PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR APPLICATION FOR A PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Patricia Prezioso, Esq.
(N.J. Bar No. 029552002)
Stacy Landau, Esq.
(N.J. Bar No. 241602017)
**Sills Cummis & Gross P.C.**
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
*Attorneys for Plaintiffs WestRock*
*Company and Multi Packaging*
*Solutions, Inc.*

Tyler G. Doyle
Baker & Hostetler LLP
811 Main Street, Suite 1100
Houston, Texas 77002
*Attorneys for Plaintiffs WestRock*
*Company and Multi Packaging*
*Solutions, Inc.*

9479865

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT .................................................................................................1

    I.    WestRock Has Satisfied All Elements for a Preliminary Injunction .........................1

        A.    WestRock Has Demonstrated a Likelihood of Success on Its Claims.................1

            1.    WestRock Will Succeed on Its Misappropriation Claims ...........................1

                a.    WestRock Has Described Representative Examples of Misappropriated Trade Secrets/Confidential Information in Sufficient Detail ........................................................................1

                b.    WestRock Took Reasonable Measures to Protect Its Information ..........2

                c.    The Evidence Demonstrates Acquisition, Use, and Disclosure by Defendants, in Addition to Inevitable Disclosure ....................................3

            2.    WestRock Will Succeed on Its Breach of Contract Claim .........................6

            3.    WestRock Will Succeed on Its Tortious Interference Claim.....................6

        B.    WestRock Will Suffer Irreparable Harm ...........................................................7

            1.    The Irreparable Harm WestRock Will Suffer Is Not Speculative ..............7

            2.    WestRock Did Not Unduly Delay or Act in Bad Faith ..............................8

            3.    The Requested Relief Is Directly Related to the Likely Harm ..................9

        C.    Defendants' Claim of Undue Hardship Is Both Unsupported and Overstated ........................................................................................10

        D.    The Public Interest Strongly Favors an Injunction against Defendants' Misconduct ......................................................................................10

    II.    Defendants' Request for a $10 Million Bond Is Frivolous.......................................11

    III.    The Court Should Grant WestRock Leave to Take Expedited Discovery................11

CONCLUSION...............................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acteon, Inc. v. Harms*,
  2020 U.S. Dist. LEXIS 210932 (D.N.J. Nov. 6, 2020)....................................................4, 6, 7

*Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*,
  157 F. Supp. 3d 407 (D.N.J. 2016) ...............................................................................6

*Howmedica Osteonics Corp. v. Howard*,
  2022 U.S. Dist. LEXIS 196746 (D.N.J. Oct. 28, 2022)..................................................2

*John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*,
  119 F.3d 1070 (3d Cir. 1997)........................................................................................6

*Kos Pharms. Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004).........................................................................................8

*Mallet & Co. v. Lacayo*,
  16 F.4th 364 (3d Cir. 2021) .........................................................................................5

*Marina Dist. Dev. Co. LLC v. AC Ocean Walk LLC*,
  2021 WL 1526552 (D.N.J. Apr. 19, 2021) ...................................................................3

*Micro Image Techs., Inc. v. Olympus Corp.*,
  2022 U.S. Dist. LEXIS 211377 (D.N.J. Nov. 22, 2022)................................................6

*Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*,
  69 F. App'x 550 (3d Cir. 2003) .................................................................................11

*Oakwood Labs, LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021).....................................................................................5, 6

*Osteotech, Inc. v. Biologic, LLC*,
  2008 U.S. Dist. LEXIS 17718 (D.N.J. Mar. 6, 2008)...................................................7

*Pharmacia corp. v. GlaxoSmithKline Consumer Healthcare L.P.*,
  292 F. Supp. 2d 594 (D.N.J. 2003) .............................................................................10

*Scherer Design Grp., LLC v. Schwartz*,
  2018 U.S. Dist. LEXIS 125644 (D.N.J. July 26, 2018)................................................7

*Talon Indus., LLC v. Rolled Metal Products, Inc.*,
  2022 WL 3754800 (D.N.J. Aug. 30, 2022) .................................................................2

ii

*Times Mirror Magazines Inc. v. Las Vegas Sports News, LLC,*
   212 F.3d 157 (3d Cir. 2000)................................................................8

**Statutes**

18 U.S.C.S. § 1836(3)(A)(i)(I).........................................................3

18 U.S.C. § 1839(5)(A), (6)............................................................3

N.J.S.A. 56:15-3................................................................................3

**Other Authorities**

Rule 65(c)..........................................................................................11

iii

Plaintiffs WestRock Company and Multi Packaging Solutions, Inc. ("MPS") (collectively "Plaintiffs" or "WestRock") respectfully submit this reply brief in further support of their application for a preliminary injunction and expedited discovery.

## PRELIMINARY STATEMENT

Defendants' Response offers excuses in the face of abundant evidence. While Genovese's and Koone's admissions are buried in conjecture within Defendants' response, they leave no doubt: the two admit to transferring WestRock data to their Max Solutions accounts, which means WestRock data is on Max's systems. These facts align with the abundant evidence described in the Complaint, moving brief, and herein, demonstrating WestRock's likelihood of success. Critically, there were no denials from the Departed Employees about transferring WestRock to personal accounts and personal devices. WestRock's trade secrets have indisputably been taken and transmitted, no doubt improving "the efficiencies" Max boasts about with regard to winning business, while WestRock continues to suffer irreparable harm. We ask this Court to please stop WestRock's bleeding through the narrowly tailored preliminary injunction requested herein.

## ARGUMENT

**I.    WestRock Has Satisfied All Elements for a Preliminary Injunction**

**A.    WestRock Has Demonstrated a Likelihood of Success on Its Claims**

**1.    WestRock Will Succeed on Its Misappropriation Claims**

**a.    WestRock Has Described Representative Examples of Misappropriated Trade Secrets/Confidential Information in Sufficient Detail**

Defendants ignore the record to claim that WestRock has not sufficiently identified any trade secrets.[1] In reality, in both the Complaint and the Kenjarski Declaration, WestRock describes

---

[1] Plaintiffs sent Defendants a proposed Confidentiality Order on January 23, 2023, and to date have received no response.

1

in detail the WestRock trade secrets the Departed Employees are known to have taken, in addition to attaching several examples. One example is a file Genovese sent to his personal e-mail account attaching, among other items, a WestRock specification sheet for Customer B that includes design, dimensions, manufacturing specifications, and gluing information *and is marked as WestRock confidential information*. (ECF # 5-1.) These are trade secrets.[2] *See Talon Indus., LLC v. Rolled Metal Products, Inc.*, 2022 WL 3754800, *10 (D.N.J. Aug. 30, 2022) (elements of a general design have been found to be adequately defined trade secrets). Genovese also forwarded customer pricing quotations and WestRock's internal margin information to his personal account. (ECF # 5-1, 5-2.) These are trade secrets. *Howmedica Osteonics Corp. v. Howard*, 2022 U.S. Dist. LEXIS 196746, at *53 (D.N.J. Oct. 28, 2022) ("data relat[ed] to materials, labor, overhead, and profit margin" is entitled to trade secret protection (citation omitted)). And moreover, these are just two of the many examples of trade secrets taken by multiple Departed Employees described in WestRock's papers.

### b.  WestRock Took Reasonable Measures to Protect Its Information

Defendants' claim that WestRock did not take reasonable measures to protect its trade secrets falls flat. WestRock's protective measures are described at length in the Kenjarski, Kamp, and McCrickard declarations, including multi-factor authentication protection, confidentiality agreements, trainings, policies, and more. (ECF # 3 at 7-8, 15.) The Departed Employees were subject to legal, contractual, and policy-based confidentiality obligations that restricted them from using or disclosing WestRock's information.

Defendants also cite isolated examples where WestRock did not demand return of devices immediately upon an employee's exit. As an initial matter, the confidentiality agreement already

---

[2] The common law definition of confidential information necessarily includes trade secrets.

requires the return of WestRock information upon exit, and there is no dispute that WestRock often

or almost always secures the return of devices before or upon exit. The Nick Shore example proves

the point—Nick Shore signed a separation agreement in which he expressly represented that he

had returned all WestRock equipment and information. When WestRock realized that Nick Shore

was not telling the truth and had failed to return a device, it promptly requested and secured the

return of that device.[3] (Supp. Prezioso Decl. ¶ 3.) Regardless, there is no legal requirement that

WestRock remind every single departing employee of their return and confidentiality obligations,

but WestRock often does provide such reminders. Simply put, WestRock took sufficient measure

to protect its trade secrets.

### c. The Evidence Demonstrates Acquisition, Use, and Disclosure by Defendants, in Addition to Inevitable Disclosure

Again ignoring the record, Defendants argue that WestRock has not shown a likelihood of

misappropriation. WestRock may demonstrate misappropriation by showing, among other things,

actual or threatened acquisition, disclosure, or use of its trade secrets. *See Marina Dist. Dev. Co.*

*LLC v. AC Ocean Walk LLC,* 2021 WL 1526552, at *5 (D.N.J. Apr. 19, 2021); *see also* 18 U.S.C.S.

§ 1836(3)(A)(i)(I); N.J.S.A. 56:15-3. Acquisition by improper means includes a breach of a duty

of secrecy (i.e., confidentiality). 18 U.S.C. § 1839(5)(A), (6). Genovese breached his express

duties under his confidentiality agreement by repeatedly e-mailing data to his personal account

and by continuing to retain WestRock information post-employment, continuing into his time as a

Max employee. The other Departed Employees similarly breached their confidentiality obligations

---

[3] WestRock inspected Nick Shore's WestRock computer and discovered that, contrary to his representations, he had accessed the WestRock computer after his separation, including, for example, a file containing a listing of over 200 employees at the South Plainfield, New Jersey location including their department, title, pay, hire date and compensation rate. (ECF #4 ¶ 76.) This is of particular concern given Shore is subject to a non-solicit of WestRock's employees in effect through July 5, 2023. Shore is currently Max's SVP of Operations.

to WestRock by copying to personal devices, e-mailing to personal accounts, and retaining WestRock information post-employment. Their self-serving claims that they only sent e-mails to their personal e-mail accounts to print are precisely the kind of insufficient excuses this Court has previously rejected.[4] *See Acteon, Inc. v. Harms*, 2020 U.S. Dist. LEXIS 210932, at *18 (D.N.J. Nov. 6, 2020) (rejecting the "I was just printing" excuse where, as here, there is evidence of a contemporaneous plan to join a competitor).

There is undisputed evidence that at least two Max employees—Genovese and Koone— actually and improperly disclosed WestRock's trade secrets to Max by e-mailing the misappropriated information to Max e-mail addresses, through which Max improperly acquired WestRock's information. (ECF # 25 ¶ 31, Ex. B; ECF # 26 ¶ 22, Ex. D; Supp. Kersh Decl. ¶ 6.). Their claims that they did not intend to use WestRock's information ring hollow. For example, Koone took WestRock information related to Customer K but claims, in very careful language, that "[t]o date," she has not yet obtained a purchase order from Customer K. (ECF #26 ¶17.) Koone fails to disclose that, almost immediately after she left WestRock and joined Max, she was already working with other Max employees to prepare Max to handle Customer K's orders. (Supp. Kenjarski Decl. ¶ 19.)

Defendants have also used WestRock's trade secrets. "Use" is interpreted in a "broad manner" under the DTSA and state trade secret law where often "implication of use, especially at

---

[4] Genovese's other excuses for sending e-mails to his personal account are similarly disingenuous. He claims that he sent WestRock information to his personal account on his last day to assist with transition work, but he nowhere claims that there was any understanding or expectation that he would engage in post-employment transition assistance. Rather, he admits that no one from WestRock ever contacted him for transition assistance. (ECF #25 ¶ 25; Shawn Smith Declaration ¶¶ 3-4.) Similarly, Genovese's convenient "mistake" of copying his personal address instead of his WestRock address, which only started the month before he separated, is highly suspect and flagrantly convenient. (Supp. Kersh Decl. ¶¶ 8.)

the pleading stage, can flow from circumstantial evidence alone." *Oakwood Labs, LLC v. Thanoo*, 999 F.3d 892, 910 (3d Cir. 2021) (citing *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985) ("[M]isappropriation and misuse can rarely be proved by convincing direct evidence." (internal quotations omitted))). WestRock has observed likely and potential use of its designs by Max related to Customers OO, GG, and NN. (Supp. Kenjarski Decl. ¶¶ 16-18.) Indeed, WestRock need not even "have direct evidence tying each trade secret to a defendant's acquisitive conduct." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 388 (3d Cir. 2021) (explaining "access to what may be trade secret information, plus the accelerated launch of [] products may easily be sufficient circumstantial evidence to support a likelihood of success on the merits of Mallet's misappropriation claim."). Similar to *Mallet*, there is evidence that Max was able to access WestRock information and came to market ready to service customers very quickly. (Supp. Kenjarski Decl. ¶¶ 9, 13.)

Genovese and Max will also inevitably disclose and use WestRock's trade secrets. It is undisputed that: (i) Genovese and Max, including numerous Max employees, are currently in possession of WestRock's information; (ii) Genovese and all or most of the other Departed Employees are in positions at Max that correspond to their positions at WestRock where they had a reason to use the information; and (iii) that Max, including Genovese and the other Departed Employees, are targeting and soliciting the same customers as WestRock, and that all or most of these customers are the subject of the stolen information. The only dispute appears to be whether the stolen pricing would be useful for a direct competitor like Max. As set forth in the Kenjarski Supplemental Declaration (¶ 11), pricing absolutely would be useful for unfair competition. Moreover, Defendants and other Max employees are in possession of other information, including artwork, produce schematics, and more. These circumstances clearly give rise to an inference that

5

a substantial threat of disclosure exists, so WestRock will succeed on an inevitable disclosure theory (in addition to proving actual misappropriation).

Finally, Max itself is responsible for the misappropriation by Genovese, Koone, and the other Departed Employees. Max has undisputed evidence that WestRock's information is on its systems but is actively resisting any effort to identify that information and remediate the situation. This is more than willful blindness but, in any event, makes Max liable for misappropriation. *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 426 (D.N.J. 2016) ("If HQ was willfully blind to the circumstances indicating Mr. Owoo's improper use of Baxter's trade secrets, HQ may be liable for misappropriation."). Defendants' claim that Max has policies against misappropriation are neutered by Max's clear failure to enforce those policies.

For all of these reasons, WestRock will succeed on all of its misappropriation claims.

### 2. WestRock Will Succeed on Its Breach of Contract Claim

Defendants do not dispute that WestRock will succeed on its breach of contract claim.[5]

### 3. WestRock Will Succeed on Its Tortious Interference Claim

WestRock detailed the tortious acts of multiple Departed Employees who attempted to interfere with WestRock's customer relationships. (ECF # 3 at 9-10; ECF # 4 ¶¶ 19, 54, 81; Suppl. Kenjarski Decl. ¶¶ 15-20.) Defendants seem to misapprehend the "malice" requirement of this claim, which only means that Defendants acted "without excuse or justification." *Micro Image*

---

[5] Defendants do not address the breach of contract claim except in passing in a single footnote. *Cf. John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived"). They challenge irreparable harm and damages. The analysis for breach of a confidentiality agreement largely tracks the analysis for trade secret claims. *Acteon*, 2020 U.S. Dist. LEXIS 210932 at *12, n.9. Irreparable harm is demonstrated below. (*See infra*, Section I(B).) As to damages, WestRock has been damaged by Genovese sharing its trade secrets with Max, as that deprives trade secrets of their secrecy and exclusive use. *Oakwood Labs.*, 999 F.3d at 913-14.

*Techs., Inc. v. Olympus Corp.*, 2022 U.S. Dist. LEXIS 211377, at *13 (D.N.J. Nov. 22, 2022). Disparaging WestRock to customers, moving business while a worker is under contract, and siphoning pricing, design, and other customer related information to a new employer/competitor is clearly unfair and malicious. Thus, WestRock will succeed on its tortious interference claim.

**B.    WestRock Will Suffer Irreparable Harm**

### 1.   The Irreparable Harm WestRock Will Suffer Is Not Speculative

Notwithstanding evidence of lost revenue and other harm tied to the customers and information taken by Genovese and the Departed Employees, Defendants argue that any harm is speculative. (ECF # 24 at 23.) Even absent evidence of present harm, a plaintiff may "seek[] injunctive relief on the basis of Defendants' causation of irreparable harm by virtue of their misappropriation of Plaintiff's trade secrets[] [and] may rely on the inevitable disclosure doctrine under New Jersey law." *Osteotech, Inc. v. Biologic, LLC*, 2008 U.S. Dist. LEXIS 17718, at *12 (D.N.J. Mar. 6, 2008). In addition to inevitable disclosure, WestRock alleges loss of goodwill, business opportunities, and diversion of customer business, each of which are recognized as irreparable harm in New Jersey. *Acteon*, 2020 U.S. Dist. LEXIS 210932 at *27; (ECF # 4 ¶¶ 54, 81; Supp. Kenjarski Decl. ¶¶ 14-20.)

Further demonstrating irreparable harm is the ill will borne WestRock by Genovese and other Departed Employees. *See Scherer Design Grp., LLC v. Schwartz*, 2018 U.S. Dist. LEXIS 125644, at *23-24 (D.N.J. July 26, 2018) (finding a likelihood of irreparable harm where defendants demonstrated ill will towards plaintiff and plaintiff's business). Genovese, Carmichael, and Koone admit that they were incensed at WestRock due to an allegedly perceived (if mistaken)[6] negative impact to their compensation from WestRock's 2022 compensation restructuring, and

---

[6] *See* McCrickard Suppl. Decl. ¶¶ 8, 11-15.

7

Defendants' response implies that WestRock deserved to be harmed by their misconduct. Kaltman, for his part, displayed his ill will by disparaging WestRock, spewing that "WestRock talks a lot, but doesn't accomplish much." (Supp. Kenjarski Decl. ¶ 21.) Widro was more explicit in his hatred for WestRock, texting someone the day before he resigned: "F[#@!] WestRock. I hate their guts. Can't wait to burn the place down (metaphorically)." (*Id*.)   Combined with the evidence of misappropriation, the clear impact on goodwill and other intangibles, and inevitable disclosure, this ill will among Max's leadership and the Departed Employees more than suffices for irreparable harm.

### 2.  WestRock Did Not Unduly Delay or Act in Bad Faith

Defendants' attempt to excuse their misconduct based on alleged delay by WestRock is unavailing, as WestRock diligently pursued protection of its information and any delay was excusable. Only *inexcusable* delay may defeat a finding of irreparable harm. *See Times Mirror Magazines Inc. v. Las Vegas Sports News, LLC*, 212 F.3d 157, 169 (3d Cir. 2000) (superseded by statute on other grounds) (15-month delay while the parties were negotiating did not preclude a finding of irreparable harm); *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (13-month delay in filing not inexcusable where party sought relief when it learned of the misappropriation and the parties understood that "the matter might be resolved absent a lawsuit").

WestRock's investigation of more than twenty Departed Employees' work computers and e-mail accounts was necessarily time-intensive by its sheer volume—including more than one million e-mails. The bulk of the Departed Employees left WestRock for Max in a narrow window, i.e., between April and July 1, 2022. As the investigation began to reveal misconduct, WestRock promptly dispatched cease-and-desist letters. In late July 2022, WestRock began negotiating forensic protocol agreements for the collection and analysis of Departed Employees' devices and accounts by a neutral forensic for identification of WestRock information, determination of where

WestRock information had been shared, and ultimate deletion of such WestRock information from those devices. Max participated in those negotiations at least as early as August 9, 2022. These negotiations culminated in a signed agreement on December 21, 2022, which counsel understood would be a template for other Departed Employees' devices and accounts. WestRock promptly provided execution copies of the agreements for the remaining Departed Employees, but despite WestRock's diligence, they did not sign them until mid-January. While the Protocol Agreements will hopefully limit this litigation and assist in the resolution of this dispute, it is critical to note that the Protocol Agreements expressly exclude the examination of any devices, accounts, or data locations owned or controlled by Max.[7]

### 3.   The Requested Relief Is Directly Related to the Likely Harm

Defendants argue that the relief WestRock seeks is unrelated to the harm WestRock will suffer absent an injunction. This is incorrect. Likely harm includes the loss of goodwill and market share that will result from precisely the misappropriation that Max will not consent to refrain from, so an order is necessary to stop Max from using WestRock's trade secrets to undercut WestRock's pricing, get a head start on competition, and otherwise avoid start-up costs. Since loss of secrecy and confidentiality is itself a form of irreparable harm, the forensic search/remediation process WestRock seeks is specifically tailored to prevent this form of harm. Finally, Defendants' position that an injunction should not alter the status quo distorts the status quo. The status quo is that there has already been some harm to WestRock and an injunction should stop additional harm. It is not, as Defendants would have it, that any ongoing misappropriation and other harm should be

---

[7] Max claims it would have agreed to a reasonable protocol if WestRock information was on Max's servers or on its premises. (ECF # 31 ¶ 12.) There is language in the Agreement restricting access to Max Solutions systems. The Agreement also specifically states that either Party can seek judicial intervention, and there no notice requirement.

permitted to continue because that is the status quo. An injunction in this case is necessary to prevent further irreparable harm, which is precisely the purpose and function of an injunction.

## C.     Defendants' Claim of Undue Hardship Is Both Unsupported and Overstated

Defendants claim that subjecting Max to a forensic search protocol would be unduly burdensome but offer no support. (ECF # 24 at 28.) Moreover, Defendants' claim that a forensic search would be unduly burdensome because Max is a "startup" is laughable given the size and extent of Max's ongoing business and resources, including recently opening two manufacturing facilities, entering into an international joint venture, acquiring a large Canadian packaging company, and receiving funding from a large private equity investor.[8] (Supp. Kenjarski Decl. ¶¶ 4-5.) Given the significant irreparable harm to WestRock that will result absent an injunction, the balance of harms weighs heavily in favor of enjoining Defendants, including requiring Max to search for WestRock's information.

## D.     The Public Interest Strongly Favors an Injunction against Defendants' Misconduct

Defendants barely address the public interest factor and do not dispute the significant public interest in protecting trade secrets and confidential information, enforcing contractual obligations (especially confidentiality agreements), and preventing unfair competition.[9] (*See* ECF # 3 at 26-27 (citing extensive case law).) WestRock is not seeking to any order restricting competition, but rather an order to stop its data from being exploited, and to locate it, identify

---

[8] Defendants also claim that there is "no evidence that WestRock information has been *broadly* distributed within Max." (ECF # 24 at 28 (emphasis added).) It is enough that there has admittedly been at least some misappropriation that needs to be remedied, and the requested relief is designed precisely to prevent further dissemination. Defendants sound like an insurance company claiming that an expectant mother does not need prenatal care because she is "only a little bit pregnant."

[9] In the single case cited by Defendants, this Court issued an injunction against *unlawful* competition precisely because "the public interest in free and fair markets is promoted by enjoining the offending activity." *Pharmacia corp. v. GlaxoSmithKline Consumer Healthcare L.P.*, 292 F. Supp. 2d 594, 610 (D.N.J. 2003) (internal citation and quotation marks omitted).

10

where it has been, and remove it from Max's system. Accordingly, all factors heavily favor the issuance of a preliminary injunction.

## II.      Defendants' Request for a $10 Million Bond Is Frivolous

Rule 65(c) ties the amount of any bond to the expected costs and damages, if any, that a party will sustain if wrongfully enjoined. Defendants request a $10 million dollar bond based on an unsupported "estimate" that participating in a forensic protocol will "interfere" with Max's operations. (ECF # 24 at 29.) None of Defendants' many declarants attest to this estimate, and Defendants offer no support. That alone defeats their request. *Neo Gen Screening, Inc. v. TeleChem Int'l, Inc.*, 69 F. App'x 550, 557 (3d Cir. 2003) (no abuse of discretion "[a]bsent any evidence by [non-movant] showing that its potential harm would be greater than $10,000"). Moreover, the fact that they seek a bond representing five times their total sales for the entirety of 2022 reveals their request to be frivolous. Accordingly, the amount of a bond, if any, should not exceed the nominal amount of $10,000.

## III.     The Court Should Grant WestRock Leave to Take Expedited Discovery

Defendants argue that WestRock's expedited discovery request should be evaluated under the *Notaro* standard rather than the "good cause" standard, but Defendants do not appear to dispute that WestRock's request satisfies the *Notaro* standard. (ECF # 24 at 29.) WestRock has demonstrated irreparable injury (*see supra*, Section I(B)) and a likelihood of success on the merits (*see supra*, Section I(A)). There is a direct connection between the requested discovery and avoidance of the irreparable injury, as insight to the misappropriation and other misconduct will enable WestRock to take proactive steps to protect its business, including supporting its case at any hearing on this preliminary injunction motion or seeking further preliminary injunctive relief if necessary. Finally, there will be no "injury" to Max if compelled to produce discovery, as it claims to be a relatively small company with only about a year's worth of data to search. By

11

contrast, WestRock will continue to suffer the effects of the misconduct by Genovese, Max, and their agents. Because WestRock satisfies the *Notaro* test (in addition to the "good cause" test), the Court should grant WestRock leave to take expedited discovery.

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in its initial brief, WestRock respectfully requests that the Court issue a preliminary injunction against Defendants, grant WestRock expedited discovery, and issue such other and further relief in WestRock's favor as the Court deems just and proper.

Respectfully submitted,

By: */s/ Patricia Prezioso*
      Patricia Prezioso, Esq.
      Stacy Landau, Esq.
      **Sills Cummis & Gross P.C.**
      The Legal Center
      One Riverfront Plaza
      Newark, New Jersey 07102
      (973) 643-7000
      *Attorneys for Plaintiffs WestRock Company and Multi Packaging Solutions, Inc.*

Dated: February 2, 2023

9479865